# Exhibit 2

Return Date: No return date scheduled
Hearing Date: 7/15/2021 9:30 AM - 9:30 AM
Courtroom Number: 2308
Location: District 1 Court
Cook County, IL

**12-Person Jury**

FILED 12607838
3/17/2021 12:37 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH01276

FILED DATE: 3/17/2021 12:37 PM   2021CH01276

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| BRITTNEY FREDERICK, ALEXANDER PRUEFER, and JINGER SANDERS, *individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>EXAMSOFT WORLDWIDE, INC.,<br><br>Defendant. | Case No. 2021CH01276<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Brittney Fredcrick, Alexander Pruefer, and Jinger Sanders ("Plaintiffs") individually and on behalf of all other persons similarly situated, by their undersigned attorneys, as and for their Class Action Complaint for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, against Defendant ExamSoft Worldwide, Inc., ("Defendant"), allege on personal knowledge, due investigation of their counsel, and, where indicated, on information and belief as follows:

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendant ExamSoft. ("ExamSoft" or "Defendant") for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Defendant develops, owns, and operates an eponymous online proctoring software that collects biometric information.

2. Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in collecting, storing and using their and other

- 1 -

FILED DATE: 3/17/2021 12:37 PM 2021CH01276

similarly situated individuals' biometric identifiers[1] and biometric information[2] (referred to collectively at times as "biometrics"). Defendant failed to provide the requisite data retention and destruction policies to the public, and failed to provide Plaintiffs the specific purpose and length of term for which a biometric identifier or biometric information was being collected, stored, and used.

3. The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

4. In recognition of these concerns over the security of individuals' biometrics the Illinois Legislature enacted BIPA, which provides, *inter alia*, that a private entity like Defendant that possesses biometrics must inform individuals in writing of the specific purpose and length of term for which such biometric identifiers or biometric information are being collected, stored and used. 740 ILCS 14/15(b).

5. Moreover, entities collecting biometrics must publish publicly available written retention schedules and guidelines for permanently destroying biometrics collected. *See* 740 ILCS 14/15(a).

---

[1] A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and "face geometry", among others.

[2] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual.

- 2 -

6. In direct violation of §§ 15(a) and 15(b) of BIPA, Defendant collected, stored and used—without first publishing sufficiently specific data retention and deletion policies—the biometrics of thousands of students who used Defendant's software to take online exams.

7. Plaintiffs are students who used ExamSoft. During Plaintiffs' use of the software, ExamSoft collected their biometrics, including eye movements and facial expressions (*i.e.*, face geometry).

8. Defendant does not sufficiently specify how long it will retain biometric information, or when it will delete such information.

9. BIPA confers on Plaintiffs and all other similarly situated Illinois residents a right to know of the risks that are inherently presented by the collection and storage of biometrics, and a right to know how long such risks will persist after ceasing using Defendant's software.

10. Yet, Defendant failed to provide sufficient data retention or destruction policies to Plaintiffs or the Class.

11. Plaintiffs bring this action to prevent Defendant from further violating the privacy rights of Illinois residents and to recover statutory damages for Defendant's improper and lackluster collection, storage, and protection of these individuals' biometrics in violation of BIPA.

## JURISDICTION AND VENUE

12. This Court has personal jurisdiction over Defendant because the biometrics that give rise to this lawsuit (1) belonged to Illinois residents, and (2) were collected by Defendant at Illinois schools or from students taking exams in Illinois

13. Venue is proper in this County pursuant to 735 ILCS 5/2-102(a) because Defendant does substantial business in this County and a substantial part of the events giving rise to Plaintiffs'

claims took place within this County because all Plaintiffs' biometrics were collected in this County.

## PARTIES

14. Plaintiff Alexander Pruefer is, and has been at all relevant times, a resident of Chicago, Illinois and has an intent to remain there, and is therefore a domiciliary of Illinois.

15. Plaintiff Brittney Frederick is, and has been at all relevant times, a resident of Chicago, Illinois and has an intent to remain there, and is therefore a domiciliary of Illinois.

16. Plaintiff Jinger Sanders is, and has been at all relevant times, a resident of Dolton, Illinois and has an intent to remain there, and is therefore a domiciliary of Illinois.

17. Defendant ExamSoft Worldwide Inc. is a Delaware corporation with its principal place of business at 5001 LBJ Freeway, Suite 700, Dallas, Texas, 75244. Defendant develops, owns, and operates an online proctoring software of the same name that is used throughout Illinois.

## FACTUAL BACKGROUND

### I. Illinois' Biometric Information Privacy Act

18. The use of a biometric scanning system entails serious risks. Unlike other methods of identification, facial geometry is a permanent, unique biometric identifier associated with an individual. This exposes individuals to serious and irreversible privacy risks. For example, if a device or database containing individuals' facial geometry data is hacked, breached, or otherwise exposed, individuals have no means by which to prevent identity theft and unauthorized tracking.

19. Recognizing the need to protect citizens from these risks, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq* ("BIPA") in 2008, to regulate companies that collect and store biometric information, such as facial geometry. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276.

- 4 -

20. BIPA requires that a private entity in possession of biometrics:

> must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

21. Moreover, entities collecting biometrics must inform individuals "in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." 740 ILCS 14/15(b)(2).

22. As alleged below, Defendant violated BIPA §§ 15(a) and 15(b) by failing to specify the length of time that it would retain biometrics, or provide a deletion schedule for biometric information.

## II. Defendant Violates Illinois' Biometric Information Privacy Act

23. Defendant develops, owns, and operates an eponymous online proctoring software.

24. One of the ways in which ExamSoft monitors students is by collecting and monitoring their facial geometry. According to its advertising materials, ExamSoft uses "a two-step authentication process—username/password and facial identification analysis—minimizing the opportunity for exam-taker impersonation." In a brochure for its authentication system, ExamSoft states that "[e]xam-takers establish a 'baseline' of authentication" that is later verified using "facial identification analysis via their device's webcam."

25. Moreover, ExamSoft's proctoring "captures a continuous audio and video recording of the exam-taker using both screen capture." After a student uploads an exam, "[a]n A.I. system analyzes the audio and video recording and identifies any abnormalities in student behavior based on movement, gaze, and background noise."

- 5 -

26. Indeed, Defendant's Privacy Policy notes that "ExamSoft may collect, store, use and retain 'biometric identifiers[,]'" which it defines as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry."

27. Defendant's Privacy Policy also states that "ExamSoft needs to collect certain data (including biometric data) from an exam taker to verify the exam taker's identity and monitor and detect irregular behavior during assessments." To capture students' biometrics, Defendant requires students to take a photo as "baseline" for their appearance before students begin an exam:




28. By using its facial recognition software, ExamSoft can check for "any abnormalities." For instance, if a student looks down from their computer screen into their lap (*e.g.*, because a student is looking up an answer on her or her phone), ExamSoft will detect this facial movement and record it as a possible instance of cheating.

- 6 -

29. Defendant uses biometrics to create an identity profile for students and to confirm students' identities during testing so as to prevent cheating.

30. Online proctoring companies like Defendant have seen a significant uptick in light of the COVID-19 pandemic, which has caused institutions to move exams online. This has led to significant privacy implications for students.

31. For instance, some students taking the Bar Exam were forced to urinate while being monitored, because if they "broke eye contact," their exams would be terminated.[3]

32. Other students have broken down in tears during exams, recorded on video by online proctoring companies.[4]

33. Students have also published numerous petitions across the country to ask school administrators to cease using online proctoring tools.[5]

34. Defendant has been in the crosshairs of this debate. On December 6, 2020, six United States Senators penned a letter to ExamSoft expressing concern for "the privacy, accessibility, and equity of students and professionals using your testing software, ExamSoft."[6] The Senators observed that "questions remain about where and how this data is being used before, during, and after tests, by both your company, the virtual proctors, and testing administrators."

---

[3] Staci Zaretskym *Law Students Forced To Urinate While Being Watched By Proctors During Remote Ethics Exam*, ABOVE THE LAW, Aug. 18, 2020, https://abovethelaw.com/2020/08/law-students-forced-to-urinate-while-being-watched-by-proctors-during-remote-ethics-exam/.

[4] Thomas Germain, *Poor Security at Online Proctoring Company May Have Put Student Data at Risk*, CONSUMER REPORTS, Dec. 10, 2020, https://www.consumerreports.org/digital-security/poor-security-at-online-proctoring-company-proctortrack-may-have-put-student-data-at-risk/.

[5] Jason Kelley, *Students Are Pushing Back Against Proctoring Surveillance Apps*, ELECTRONIC FRONTIER FOUNDATION, Sept. 25, 2020, https://www.eff.org/deeplinks/2020/09/students-are-pushing-back-against-proctoring-surveillance-apps.

[6] Richard Blumenthal, et al., Letter to ExamSoft (Dec. 3, 2020), https://www.blumenthal.senate.gov/imo/media/doc/2020.12.3%20Letter%20to%20Ed%20Testing%20Software%20Companies%20ExamSoft.pdf

35. These concerns were warranted. As the Supreme Court of California noted, "ExamSoft's Privacy Policy appears to permit the company to use and disclose applicants' data for many purposes, some of which appear to be unrelated to the administration of the exam."[7] ExamSoft's Privacy Policy vaguely states it retains "this information only for so long as required to provide the service, but in any event only for so long as required by the institution that is using the applicable ExamSoft product, or failing instruction from the client, so long as the client account is maintained." This policy fails to adequately articulate how long ExamSoft will remain in possession of Plaintiffs and putative class members' biometric information. This policy also fails to include a section on the deletion of biometric information, and fails to articulate a maximum time limit on how long it retains biometrics.

36. ExamSoft's consent form at the time of test administration is no more specific. For example, an ExamID Consent featured in an ExamSoft tutorial merely states it will "retain the Biometric Data only for so long as required by the examination giver."[8] Like its Privacy Policy, ExamSoft's consent form gives Plaintiffs no ability to determine how long ExamSoft will remain in possession of their biometric information.

37. Upon information and belief, ExamSoft's Privacy Policy, consent form, and actual data retention policies are the same and/or substantially similar, regardless of which school class members attended, or which test a class member took, when using Defendant's services.

38. Upon information and belief, ExamSoft continues to retain Plaintiffs' biometrics beyond the intended purpose for collection.

---

[7] Supreme Court of California, Letter to Sean M. SeLegue (Sept. 25, 2020) https://www.courts.ca.gov/documents/9252020_ltr_selegue_copy.pdf.

[8] https://examsoft.force.com/etcommunity/s/article/ExamID-and-ExamMonitor-from-the-Student-Perspective.

- 8 -

39. In direct violation of BIPA § 15(b)(2), from at least approximately March 2020 through present, Defendant never informed Illinois students who had their facial geometry collected of the specific length of time for which their biometric identifiers or information would be collected, stored and used.

40. In direct violation of § 15(a) of BIPA, from at least approximately March 2020 through present, Defendant did not have written, publicly available policies identifying its retention schedules or guidelines.

### III. Experience of Plaintiff Brittany Frederick

41. Plaintiff Brittany Fredcrick is an Illinois domiciliary. Plaintiff Frederick used ExamSoft to take the Illinois Bar Exam in October 2020.

42. When Plaintiff Frederick used ExamSoft, her facial geometry, including her eye movements and facial expressions, was collected by Defendant.

43. When Plaintiff Frederick logged onto ExamSoft, her facial geometry would be matched up to the biometrics she provided to Defendant to ensure she was the individual who was supposed to be taking an exam.

44. Defendant did not inform Plaintiff Frederick of the specific length of time that it intended to collect, store, and use her biometrics, nor did Defendant provide Plaintiff Frederick with a retention schedule and guidelines for permanently destroying her biometrics.

45. Thus, when Plaintiff Frederick provided her biometrics to Defendant, Defendant collected said biometrics in violation of BIPA §§ 15(a) and 15(b).

### IV. Experience of Plaintiff Alexander Pruefer

46. Plaintiff Pruefer is an Illinois domiciliary. Plaintiff Pruefer used ExamSoft to take his exams while enrolled at the John Marshall Law School in Chicago, from August 2017 to

- 9 -

August 2019. The John Marshall Law School merged with the University of Illinois at Chicago in August 2019, becoming the UIC John Marshall Law School. Plaintiff Pruefer continued his enrollment at UIC John Marshall Law School and used ExamSoft to take his exams, from August 2019 to May of 2020.

47. When Plaintiff Pruefer used ExamSoft, his facial geometry, including his eye movements and facial expressions, was collected by Defendant.

48. When Plaintiff Pruefer logged onto ExamSoft, his facial geometry would be matched up to the biometrics he provided to Defendant to ensure he was the individual who was supposed to be taking an exam.

49. Defendant did not inform Plaintiff Pruefer of the specific length of time that it intended to collect, store, and use his biometrics, nor did Defendant provide Plaintiff Pruefer with a retention schedule and guidelines for permanently destroying his biometrics.

50. Thus, when Plaintiff Pruefer provided his biometrics to Defendant, Defendant collected said biometrics in violation of BIPA §§ 15(a) and 15(b).

## V. Experience of Plaintiff Jinger Sanders

51. Plaintiff Sanders is an Illinois domiciliary. Plaintiff Sanders used ExamSoft to take her exams at St. George's School of Medicine from September 2019 to December 2020. From March 2020 to December 2020, Plaintiff Sanders used the proctored version of ExamSoft.

52. When Plaintiff Sanders used ExamSoft, her facial geometry, including her eye movements and facial expressions, was collected by Defendant.

53. When Plaintiff Sanders logged onto ExamSoft, her facial geometry would be matched up to the biometrics she provided to Defendant to ensure she was the individual who was supposed to be taking an exam.

- 10 -

54. Defendant did not inform Plaintiff Sanders of the specific length of time that it intended to collect, store, and use her biometrics, nor did Defendant provide Plaintiff Sanders with a retention schedule and guidelines for permanently destroying her biometrics.

55. Thus, when Plaintiff Sanders provided her biometrics to Defendant, Defendant collected said biometrics in violation of BIPA §§ 15(a) and 15(b).

## CLASS ALLEGATIONS

56. **Class Definition:** Plaintiffs seek to represent a class of similarly situated individuals defined as all Illinois residents who used ExamSoft to take an exam online and who had their facial geometry or other biometric information collected, captured, received, or otherwise obtained and/or stored by Defendant (the "Class").

57. Plaintiff Frederick also seeks to represent a subclass of similarly situated individuals, defined as follows (the "Bar Exam Subclass"):

> All Illinois residents who took the October 2020 Illinois Bar Exam and who had their facial geometry collected, captured, received, or otherwise obtained and/or stored by Defendant.

58. Plaintiff Pruefer seeks to represent a class of similarly situated individuals, defined as follows (the "John Marshall Subclass"):

> All students at the John Marshall Law School in Chicago who took an online exam from August 2017 to August 2019 and who had their facial geometry collected, captured, received, or otherwise obtained and/or stored by Defendant.

59. Plaintiff Pruefer seeks to represent a class of similarly situated individuals, defined as follows (the "UIC John Marshall Subclass").

> All students at the UIC John Marshall Law School who took an online exam from August 2019 to May 2020 and who had their facial geometry collected, captured, received, or otherwise obtained and/or stored by Defendant.

- 11 -

60. Plaintiff Sanders seeks to represent a class of similarly situated individuals, defined as follows (the "St. George's Subclass"):

> All students at the St. George's School of Medicine who took an online exam from March 2020 through December 2020 and who had their facial geometry collected, captured, received, or otherwise obtained and/or stored by Defendant.

61. Collectively, the Class, the Bar Exam Subclass, the John Marshall Subclass, and the St. George's Subclass shall be known as the "Classes."

62. Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

63. **Numerosity:** Pursuant to 735 ILCS 5/2-801(1), the number of persons within the Class is substantial, believed to amount to thousands of persons. At this time, Plaintiffs do not know the exact number of members of the aforementioned Classes. However, given the size of Defendant's business and the number of students who took the Bar Exam or online exams at the John Marshall Law School in Chicago or St. George's School of Medicine, the number of persons within the Classes is believed to be so numerous that joinder of all members is impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

64. **Commonality and Predominance:** Pursuant to 735 ILCS 5/2-801(2), there is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual members of the Classes include:

- 12 -

(a) whether Defendant collected or otherwise obtained Plaintiffs' and the Classes' biometric identifiers and/or biometric information;

(b) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

(c) whether Defendant destroyed Plaintiffs' and the Classes' biometric identifiers and/or biometric information once that information was no longer needed for the purpose for which it was originally collected;

(d) whether Defendant properly informed Plaintiff and the Class that it collected, used, and stored their biometric identifiers and/or biometric information; and

(e) whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

65. **Typicality:** Plaintiffs claims are typical of those of the Classes because Plaintiffs, like all members of the Classes, used ExamSoft to take an online exam, and had their biometrics recorded and improperly stored by Defendant in violation of BIPA.

66. **Adequate Representation:** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of the Classes. Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiffs have raised viable statutory claims or the type reasonably expected to be raised by members of the Classes, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Classes, additional claims as may be appropriate, or to amend the definition of the Classes to address any steps that Defendant took.

- 13 -

67. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. Even if every member of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with BIPA.

## COUNT I – FOR DAMAGES AGAINST DEFENDANT
## VIOLATION OF 740 ILCS 14/15(A)

68. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

69. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

70. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

71. Defendant failed to comply with these BIPA mandates.

- 14 -

72. Defendant is a corporation and does business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

73. Plaintiffs are individuals who their "biometric identifiers" captured and/or collected by Defendant, as explained in detail in above. *See* 740 ILCS 14/10.

74. Plaintiffs' biometric identifiers were used to identify Plaintiffs and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

75. Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

76. Defendant lacked retention schedules and guidelines for permanently destroying Plaintiffs' and the Classes' biometric data. As such, the only reasonable conclusion is that Defendant has not, and will not, destroy Plaintiffs' and the Classes' biometric data when the initial purpose for collecting or obtaining such data has been satisfied.

77. On behalf of themselves and the Classes, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Classes by requiring Defendant to comply with BIPA's requirements for the collection, capture, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs on behalf of themselves and the proposed Class, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiffs as representative of the Classes, and appointing their counsel as Class Counsel;

B. Declaring that Defendants' actions, as set out above, violate BIPA, 740 ILCS 14/15(a), *et seq.*;

C. Awarding statutory damages of $5,000.00 for each and every intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) if the Court finds that Defendants' violations were negligent;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendants to collect, store, and use biometric identifiers and/or biometric information in compliance with BIPA;

E. Awarding Plaintiffs and the Classes their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

F. Awarding Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

## COUNT II – FOR DAMAGES AGAINST DEFENDANT
## VIOLATION OF 740 ILCS 14/15(B)(2)

78. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

79. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

80. BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first … (2) informs the subject …

- 16 -

in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." 740 ILCS 14/15(b)(2).

81. Defendant failed to comply with these BIPA mandates.

82. Defendant is a corporation and does business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

83. Plaintiffs and the Classes are individuals who have had their "biometric identifiers" collected and/or captured by Defendant, as explained in detail above. *See* 740 ILCS 14/10.

84. Plaintiffs' and the Classes' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

85. Defendant systematically and automatically collected, captured, used, and stored Plaintiffs' and the Classes' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

86. Defendant never informed Plaintiffs, and never informed any member of the Classes, in writing of the specific length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

87. By collecting, capturing, storing, and/or using Plaintiffs' and the Classes' biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Classes' rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

88. On behalf of themselves and the Classes, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Classes by requiring Defendant to comply with BIPA's requirements for the collection, captures, storage,

use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and the proposed Classes, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiffs as representatives of the Classes, and appointing his counsel as Class Counsel;

B. Declaring that Defendant's actions, as set out above, violate BIPA, 740 ILCS 14/1, *et seq.*;

C. Awarding statutory damages of $5,000.00 for each and every intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) if the Court finds that Defendant's violations were negligent;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to collect, store, and use biometric identifiers and/or biometric information in compliance with BIPA;

E. Awarding Plaintiffs and their Classes their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

F. Awarding Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiffs demand a trial by jury of all issues so triable.

FILED DATE: 3/17/2021 12:37 PM 2021CH01276

Dated: March 17, 2021

Respectfully submitted,

*/s/ Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
Attorney No. 38819
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
E-mail: malmstrom@whafh.com

*Local Counsel for Plaintiffs and the Putative Classes*

**BURSOR & FISHER, P.A.**
Alec M. Leslie*
Max S. Roberts*
888 Seventh Avenue, Third Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
aleslie@bursor.com
mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly*
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 679-9006
creilly@bursor.com

*\*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs and the Putative Classes*